# National Saving and Loan Association of Rochester *v.* Neeley.

*Building and loan association—Mortgage—Fines.*

By the articles of a building and loan association the stock was to mature on the expiration of seventy-two months. A member secured a loan from the association, assigning her stock as security, and executing a bond and mortgage of real estate as additional security. The articles provided for the association being made whole on account of default made in payments, by the imposition of fines, and the only right to cancel stock and forfeit the benefit of payments made was " when the fines upon any certificate of shares shall amount to fifty per cent of the amount paid on said certificate." The borrowing member defaulted in payments after the sixty-fifth month, but the association did not cancel the stock, and the series proved successful and matured. The fines upon the borrowing member's shares did not amount to fifty per cent of the amount paid on them. *Held,* that in an accounting between the association and a borrowing member, the latter was entitled to credit for profits on her stock, and that the association could only collect from her the amount required to mature her stock at its expiration, including the charges made against her for default, with interest.

Argued April 18, 1899. Appeal, No. 385, Jan. T., 1898, by plaintiff, from judgment of C. P. Clearfield Co., Dec. T., 1896, No. 279, on trial by court without a jury, in case of the National Saving and Loan Association of Rochester, N. Y., v. Lizzie C. Neeley and J. C. Neeley. Before McCollum, Mitchell, Dean, Fell, Brown and Mestrezat, JJ. Affirmed.

Scire facias sur mortgage.

The facts appear by the opinion of Gordon, P. J., which was as follows:

This suit is a scire facias sur mortgage, and by agreement of the parties in writing entered into February 23, 1898, when the cause was reached on the trial list, was submitted to the decision of the court without the intervention of a jury, under the act of assembly of April 22, 1874. The evidence was adduced in open court, and taken down by the official stenographer. after which arguments of counsel were heard. Our findings of fact, answers to points, conclusions of law and decree are as follows, viz:

FINDINGS OF FACT.

The plaintiff association is a foreign corporation, duly chartered under the laws of the state of New York, and authorized to do a regular building and loan association business under the laws of said state, its charter of incorporation and the articles of association adopted in pursuance thereof. On June 19, 1889, it filed with the secretary of the commonwealth of Pennsylvania a certificate in compliance with the act of assembly providing therefor, which authorized it to do business in this state. On May 24, 1890, Lizzie C. Neeley, one of the defendants, made application to the plaintiff association for thirty shares of its capital stock, which were duly granted to her, as evidenced by certificate thereof, dated June 1, 1890. The stock was of the par value of $100 and was to mature in six years. To mature the stock and entitle her to demand and receive the par value, she was required to pay an admission fee of $60.00, being $2.00 on each share, and the following payments during the said period of six years, viz: (1) A quarterly instalment of $7.50, or twenty-five cents a share, as dues, which with the admission fee went into the expense fund for the purpose of defraying the expenses of conducting the business affairs of the association; (2) a monthly instalment of $30.00, being $1.00 on each share, and (3) in case of default in payment of the said quarterly or monthly instalments, when due, she had to pay a weekly fine of $1.50, being five cents a share, during the continuance of the default. And the second condition provides that whenever the fines imposed amount to fifty per cent of the amount deposited as monthly instalments, then the "certificate shall be canceled, and all deposits made thereon shall be forfeited to the association."

The articles provide that members may withdraw their stock at any time after one year and receive back the monthly payments made of $1.00 on each share, with interest. If the withdrawal is within three years the rate of interest allowed is four per cent, and if after that period six per cent per annum. The withdrawing member thus gets back his stock payments with interest, loses his admission fee and quarterly dues paid, and gets no profits earned by the association with the moneys paid by himself and other members on stock and loans.

The articles provide that each shareholder is entitled to a

loan of $100 on each share of stock held, on assigning said stock to the association and giving additional satisfactory security by bond and mortgage on real estate, for which loan he is required to pay forty cents each month per share ($12.00 on thirty shares) interest; and twenty-five cents each month per share ($7.50 on thirty shares) premium, during the continuance of the loan. The premium is a fixed one,—the same on all loans,—and is not adjusted by competitive bidding as provided for in many other building and loan associations. It is the benefit which the association claims the borrowing member will enjoy over other methods of borrowing money, and goes to make profits and accumulations for the benefit of all members. It is not interest, though paid by the borrower because of the loan, but is money paid in pursuance of the contract entered into by the shareholder for his benefit and from which he expects to reap a profit. The loan can be procured at any time when there is sufficient money in the treasury, and no matter when procured it runs during the life of the stock and is paid upon its maturity. The payments of monthly interest and premium keep down the interest on the loan, and the maturity of the stock pays the principal. Section 1, of article 4 provides " In case any member shall fail to make any payment of principal or interest, premium or fine, or if any part of such principal, interest, premium or fine shall remain unpaid for three months after the same shall become due, the board of managers shall have the power to collect the same by action at law, or by foreclosure of the mortgage given to secure such payment, and the whole amount secured thereby shall be deemed due and payable, immediately." And section 4 of the same article provides, " Each certificate of shares shall be charged with any and all amounts that may be owing from the shareholder, or his or her assigns, to the association whether in dues, payments, instalments, fines, loans, interests or premiums, and at the time of paying said certificate, the association reserves a lien thereon to secure the payment of any such indebtedness, and the right to deduct and withhold the amount of any such account, or indebtedness in payment thereof."

On June 10, 1890, Lizzie C. Neeley made application for a loan of $3,000 on her thirty shares of stock, which was granted by the association, and as required by the articles of association,

she, by indorsement on back of certificate, without date, assigned said stock; and also, with her husband, J. C. Neeley, on August 8, 1890, gave to the association a mortgage on lot of ground owned by her, situate in the borough of DuBois, securing bond of same date in the penal sum of $6,000, conditioned for the payment of " the just and full sum of $3,000, in manner following, that is to say, the sum of $30.00, monthly instalments of principal, on the thirty shares of capital stock of said association, on or before the last Saturday of each and every month, and the sum of twenty-five cents for each of said shares as quarterly dues each and every third month, for the term of six years, commencing with August 8, 1890, the date of the certificate of shares held by said obligor, and $12.00 interest and $7.50 premium on said shares on or before the last Saturday of each and every month from the date hereof, until the expiration of said term, also pay all dues, fines and penalties that may be imposed upon said her or them as member of said association (pursuant to the articles of association, rules and regulations thereof)," containing, inter alia, the following clause, " And it is hereby further provided that in case default shall be made in the payment of any instalment of principal, or any part thereof, or any interest, or premium moneys, or any part thereof, hereby secured to be paid, or any fines or penalties imposed upon the said Lizzie C. Neeley as member of said association, as aforesaid, shall remain due and unpaid for the period of three successive months after the same shall become due and payable, or in the payment of any sum assessed for taxes on said principal sum or interest as aforesaid for the space of thirty days, after written notice of its assessment shall be left upon the said mortgaged premises, or if a breach of any other of the foregoing conditions be made by the said obligor, their heirs, executors or assigns, that then, in that case, the whole principal sum remaining unpaid, together with the unpaid interest, dues, penalties, fines and assessments thereon, together with an attorney's commission of five per cent on said principal sum shall, at the option of said association, become due and payable forthwith, anything herein contained to the contrary notwithstanding."    Said mortgage is recorded in Clearfield county in mortgage book " M," page 378.

Said Lizzie C. Neeley paid the admission fee and all of the

said monthly and quarterly instalments as they matured upon said stock and loan, as provided by the articles of association, for and during the period of sixty-five months, and then made default. The last payment was made October 30, 1895, and the total amount paid was $3,243.05. Payments but for seven months longer, or until May 1, 1896, amounting to $371.50, would have been required to mature the stock.

On November 18, 1896, this suit was brought to foreclose the mortgage, the plaintiff association in their præcipe claiming to recover the sum of $1,449, as per calculation, as follows:

| | |
|---|---:|
| Condition money of said mortgage, . . | $3,000.00 |
| Int. to last Saturday of October, 1896, . | 144.00 |
| Prem." "      "      "      "      " . . | 90.00 |
| Quarterly dues, . . . . . . | 30.00 |
| Fines, . . . . . . . . | 66.00 |
| Total, . . . . . . | $3,330.00 |
| Credit by amount of dues on loan, . . . | 1,950.00 |
| Balance, . . . . . . | $1,380.00 |
| Attorney's commission, 5 per cent, . . . | 69.00 |
| Real debt, . . . . . | $1,449.00 |

I further find:

1. That the contract between the parties consists of the applications for stock and loan, the certificate of stock with articles of association indorsed and made part thereof, and the bond and mortgage.

2. The loan was made on the stock, with the mortgage given as an additional security.

3. That it was made with a New York corporation, made and to be performed in the state of New York.

4. That Mrs. Neeley never withdrew from the association.

5. That her stock was never canceled by the association, or the payments made thereon forfeited, nor was she liable to have such cancelation or forfeiture take place. She made default in payments as stated after the sixty-fifth month, and became liable to fines which were imposed upon her, as appears by the claim in suit, not only during the entire period of seventy-two months, but up till suit was brought.

6. The articles provide for the association being made whole on account of default made in payments, by the imposition of fines, and the only right to cancel stock and forfeit the benefit of payments made is "when the fines upon any certificate of shares shall amount to fifty per cent of the amount paid on said certificate." See second condition, and article 4, sections 10 and 11. Until the stock period expired the association had the right, upon three months' default being made, to either collect the arrearages, or permit them to accumulate until cancelation of stock occurred from accumulation of fines. They had the option of collecting these arrearages either by an action at law and thus permit the stock and loan to continue, or by foreclosure of ·mortgage which would result in cancelation of the stock. Until canceled in one of these ways the stock, together with all the obligations of the holder arising therefrom, continued in force unaffected by the default in payment.

7. At the expiration of the stock period (seventy-two months) Lizzie C. Neeley's stock being in force, she was liable for and had the right to pay the arrearages thereon, which, according to the testimony of the secretary, then amounted to $371.50, and upon that amount being paid, the stock would have matured, the loan become extinguished, and the mortgage satisfied.

8. The association was successful and all of the stock in class " A " to which Mrs. Neeley belonged matured at the expiration of the stock period.

### CONCLUSIONS OF LAW.

1. The contract between the parties having been made and intended to be performed in the state of New York, it must be construed and the rights of the parties measured by the laws of that state.

2. The contract is authorized by said laws and is legal, and the same constitutes the law between the parties and their rights are to be measured in accordance with its terms.

3. The payments on the stock and loan made by Lizzie C. Neeley, the shareholder, were made for her benefit in pursuance of her contract obligation therefor, and are not usurious.

4. From the facts found, that her stock had not been withdrawn or canceled and was subsisting at the expiration of the period of its life (seventy-two months) the conclusion follows

that her only liability upon the mortgage is for the amount which she would have been required to then pay to mature the stock, and pay interest and premiums on the loan, with interest, and an attorney's commission of five per cent thereon.

This last conclusion involves the real issue in the case. Is it correct? It is in accordance with the contention of defendant and against that of the plaintiff. The plaintiff's counsel claim to be entitled to recover the principal debt, $3,000, and in addition the instalments of interest, premium, dues and fines, from the time default was made up to the time suit was brought, less only the sixty-five monthly stock payments, and without any interest thereon or profits of any kind. Payments to the amount of $3,243.05 were made and yet the credits allowed in plaintiff's statement only amount to $1,950, a difference of $1,293.05. The amount sued for is $1,380, and yet had $443.82 more been paid, the entire debt would have been extinguished. This shows a loss to Mrs. Neeley of $931.68, which plaintiff claims was the result of her default. To my mind to so adjust the claim would work a great hardship, which should not be permitted, if it can legally be avoided. To justify such an adjustment, specific authority for it must be pointed out in the law or contract between the parties. Plaintiff's counsel, to sustain their contention, claim that as Mrs. Neeley did not elect to withdraw her stock, she is not entitled to the interest for average time on stock payments allowed to withdrawing members. This is correct. Further, that the balance due is to be adjusted on the basis provided for defaulting stockholders. But where is provision made therefor? Plaintiff's counsel, at argument, in answering this question, admitted it was not contained in the articles of association, but claimed it was provided for in the conditions of the bond. But, in my opinion, this is not correct. The condition of the bond is to pay $3,000 by maturing the stock, i. e., by making the payments provided for in the certificate of stock, to wit: stock payments (called in the bond "instalments of principal"), dues, interest, premiums and fines. The clause relied upon is that providing that on thirty days' default being made in any of said payments "the whole principal sum then remaining unpaid, together with the unpaid interest, dues, penalties, fines and assessments thereon, together with an attorney's commission of five per cent on the

said principal sum, shall, at the option of said association, become due and payable forthwith." This is cited to sustain the claim that the defaulting borrower is only entitled to credit for the stock or principal payments made ; that nothing was paid on account of principal, except the monthly payments of $30.00.

But this position cannot be sustained for the reasons :

1. The loan was not on the mortgage but on the stock, which was assigned to the association as security, and which under section 5 of article 4 would be liable for arrearages without any assignment. The bond and mortgage were only given as collateral security to ensure the stock and loan payments, as provided in the articles of association. The payments mentioned in the bond are identical with those provided for in the articles of association. The bond recites that the payments are to be made " on said shares " and " pursuant to the articles of association " and they could have been collected on · the stock contract without regard to the mortgage. If so collected, the stock would thereby have been matured and the mortgage debt extinguished. On this point plaintiff's counsel, in their law brief furnished the court, say : " This was a loan of money by a New York party to a citizen of Pennsylvania and contracted by the defendant to be repaid to the plaintiff at its home office in the city of Rochester, in that state. The bond and mortgage, though connected with it, are not the essential parts of the contract. The real contract is in the application for stock, the stock certificate, the application for the loan and the loan granted. The plaintiff might sue upon that, even in this court, and recover without resort to the bond or mortgage. They are but securities for the loan."

2. The stock was not canceled, nor was it liable to cancelation and forfeiture of payments made upon it under section 11 of article 4.

3. The association was made whole on account of the default made, by the imposition of weekly fines. These fines were imposed, and these and all other stock and loan payments are charged to and claimed from defendants in this suit. With these charges made against Mrs. Neeley, it cannot be said she is profiting by her default. On the contrary, she is required to pay for her default or will be through this foreclosure suit, and in doing so she makes it good.

4. The agreement of the association is that the stock will

mature in six years, or by seventy-two payments. There is no provision that it shall be matured at the expiration of the period by a dividend to be declared by the directors and credited only to the shareholders not in default. The only provision for dividend is that provided in section 7 of article 2, which authorizes the directors to declare "extra dividends from any surplus that may accumulate from the net earnings more than sufficient to pay the shares at the fixed date of maturity." There was no deficiency of profits, and the stock in class "A," to which Mrs. Neeley belonged, was duly matured. The funds are on hand to pay her, and plaintiff can only collect from her the amount required to mature her stock at its expiration, including the charges made against her for default, with interest. If the profits on Mrs. Neeley's stock are not credited to her, where should they be credited? Who will receive them? The other members of her class will not likely do so, as it has matured and the evidence shows they are paid.

In accordance with the foregoing views the balance due on the mortgage will be calculated thus:

Defendant, Dr.

June 1, 1896.

To amount of Loan   .    .    .    .    .   $3,000.00

Cr.

June 1, 1896.

By 30 shares stock $3,000 less amount due thereon for arrearages as follows:

| | | |
|---|---|---|
| 7 monthly stock payments $30 each | $210.00 | |
| 7 months' dues, quarterly   .   . | 13.12 | |
| 7 months' interest   .   .   . | 84.00 | |
| 7 months' premium   $7.50   .   . | 52.50 | |
| 7 months' (30 weeks') fines @ $1.50 | 45.00— | 404.62 |
| | | $2,595.38 |

| | | |
|---|---|---|
| Balance due June 1, 1896, | $404.62 | |
| Interest to March 19, 1898, | 43.70 | |
| Attorney's commission @ 5% | 22.42 | |
| Total   .   .   . | $470.74 | |

Decree will be made in accordance with the foregoing views.

DECREE.

Now, March 19, 1898, it is ascertained that there is due this day and owing to plaintiff from defendants, the sum of $448.32 debt; attorney's commission, $22.42; total, $470.74.    And it is ordered, adjudged and decreed that the prothonotary forthwith give notice to the parties, or their attorneys, of this decision, and if no exceptions are filed within thirty days after service of such notice, enter judgment for said amount in favor of plaintiff and against the defendants.

*Error assigned* was the judgment of the court.

*E. R. Mayo*, with him *A. M. Liveright*, for appellant.—As Mrs. Neeley had assigned her stock to the plaintiff as security for the loan, she could not withdraw as a stockholder, so long as any part of her debt remained unpaid : Wadlinger v. Wash. German Building, etc., Assn., 153 Pa. 622 ; Watkins v. Workingmen's Building & Loan Assn., 97 Pa. 514.

The real question in the case is, What, if any, profits upon her stock payments is Mrs. Neeley entitled to ?    She defaulted at the sixty-fifth payment, and has hitherto refused to pay more upon her contract, both as a stockholder and a borrower, therefore, she is not entitled to any profits on her stock payments : Watkins v. Workingmen's Building & Loan Assn., 97 Pa. 514; Barker v. Bigelow, 15 Gray (Mass.), 130 ; Endlich on Law of Bldg. Assns., secs. 156, 175, 456.

*A. L. Cole*, with him *H. A. Moore*, for appellee, cited Tyrrell Loan, etc., Assn. v. Haley, 139 Pa. 476.

OPINION BY MR. JUSTICE McCOLLUM, July 11, 1900 :

This is a suit upon a mortgage on the property of Lizzie C. Neeley, one of the defendants.    When the case was reached for trial it was agreed by the parties to submit it to the decision of the court under the act of April 22, 1874.    It seems that Lizzie C. Neeley on May 24, 1890, applied to the plaintiff for thirty shares of its capital stock.    The application for the stock was complied with and a certificate for it was granted to the applicant on June 1, 1890.    The shares of the stock were of the par value of $100, and were to mature in six years.    On

August 8, 1890, Lizzie C. Neeley and J. R. Neeley, her husband, executed and delivered to the plaintiff their bond and mortgage in the sum of $6,000, conditioned for the payment of $3,000 as defined therein. The suit upon the mortgage was instituted by the plaintiff on November 17, 1896, for the recovery of an alleged balance of $1,449 from the defendants on their alleged default "in the payment of the instalment on principal, interest, premium and quarterly dues for more than the space of three months, whereby the said balance became due and payable." The plaintiff's statement of the balance due from the defendant does not correspond with its statement of balance in its seventh exception, or in its fifth point. There is at best a seeming discrepancy between them to which no explanation is attached. Payments were made by the defendant to the amount of $3,243.05, while all the credit allowed her in the plaintiff's statement of its claim was $1,950. The defendant at the time of her alleged default had made sixty-five monthly payments in accordance with the terms of the articles of the association and had she made seven more monthly payments in conformity with said terms they would have extinguished her liability to the plaintiff in the transaction between them.

The learned judge of the court below upon a careful consideration of all the testimony in the case, of all the articles of association relating to the questions involved, of the terms of the bond and mortgage and of the rights and obligations of the contracting parties arrived at the conclusion that the balance due from the defendants to the plaintiff amounts to the sum of $470.74. His findings of fact and conclusions of law, together with the judgment entered, do not appear to have been successfully combatted by the plaintiff at any point. We therefore dismiss the assignments of error and affirm the judgment.